IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
JOANNE DUGAN and  
JOANNE DUGAN STUDIO, LLC,

                                Plaintiff,

-against-

BLACK BOX PROJECTS t/a  
KATHLENE FOX-DAVIES d/b/a  
FOX-DAVIES ARTS, LTD.

                                Defendants.
-------------------------------------------------------------------------x

**Index No.:**

**Complaint**

Plaintiffs Joanne Dugan and Joanne Dugan Studio LLC (referred to herein as "Dugan" unless otherwise stated, by and through their attorneys Mazzola Lindstrom LLP, and as for her complaint against Black Box Projects and Kathlene Fox-Davies doing business as Fox-Davies Arts LTD (referred to hereinafter as "BBP"), alleges as follows upon information and belief:

### Nature of the Claim

1. This action arises

2. from BBP's blatant and unlawful damage and mishandling of valuable original artworks created by plaintiff Dugan and consigned to BBP for sale, in accordance with New York Arts and Cultural Affairs Law ("NYACAL") §12.01. Dugan brings this action to recoup the value of destroyed artworks and for the full and complete payment of all monies owed, with an award of attorney's fees as expressly authorized by the NYACAL.

3. Dugan's agreement with BBP provided that Dugan would retain title to the consigned artworks until they were sold, and that unsold consigned artworks would be returned.

4. BBP took possession of and subsequently returned Dugan's artwork to her at the end of the consignment agreement, but when the works arrived back to Dugan, they had severe damage, forcing Dugan to declare the works a total loss.

1

5. BBP had fiduciary obligations, under common law and under Article 12 of New York's Arts and Cultural Affairs Law ("NYACAL"), as consignee of Dugan's art. Those obligations included, among other things, the duty of care and the duty of loyalty. BBP breached its fiduciary duties, and breached its obligations under NYACAL Article 12, by failing to keep the artworks safe and free from damage. BBP additionally was negligent and grossly negligent in BBP's handling of Dugan's works of art by causing damage to Dugan's artworks in this action, by failing to supervise employees and contractors who caused damage to that art, and by failing to address the damage immediately.

6. Dugan has demanded that BBP reimburse Dugan several times for the losses already incurred, for the value of the artworks deemed a total loss and for the diminished value of those works of art that have lost value as a result of the damage.

7. To date, BBP has failed and refused to reimburse or otherwise compensate Dugan for the losses, which at this time are believed to be more than $144,300.00, with the precise amount to be determined at the time of trial.

8. This action also seeks equitable relief.

**Parties**

9. Now and at all times hereinafter mentioned, Joanne Dugan was and still is domiciled in New York.

10. Joanne Dugan Studio, LLC is and has been located at 41 Union Square West, #1135 New York, NY 10003.

11. Black Box Projects t/a Kathlene Fox-Davies and Fox-Davies Arts Ltd. is and has been domiciled at 16 Suffolk Road London SW13 9NB London, United Kingdom.

12. At all relevant times, BBP is and has been a business duly organized and existing in the United Kingdom with a principal place of business and offices at 16 Suffolk Road, London

SW13 9NB, United Kingdom. It has no partners or members in New York, or anything else that would spoil diversity jurisdiction in New York.

## Jurisdiction and Venue

13. This Court has diversity subject-matter jurisdiction over the transactions and occurrences relating to the loss by Dugan under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

14. Pursuant to 28 U.S. Code § 1391(b)(2), venue is proper in the Southern District of New York as a substantial part of the events or omissions giving rise to the claim occurred there, plaintiff resides in the district and defendant conducts its business in this district and is therefore subject to personal jurisdiction in this District.

15. The Court also has diversity jurisdiction over this matter, pursuant 28 U.S.C § 1332, as the contract at issue herein involves the promotion and sales of artworks having a value substantially greater than $75,000.

## Factual Background

16. Dugan is an acclaimed artist, who designs and creates unique works of art. She is a New York–based photographer whose work has been shown in museums and galleries throughout the United States, Europe, and Japan.

17. BBP is an art gallery that represents artists in the marketing and sale of their works of art.

18. In June 2019, BBP offered an agreement to Dugan pursuant to which she would consign original artworks to BBP for the purpose of exhibition and sale on a commission basis, and BBP would sell and exhibit Dugan's work for sale.

19. In July 2019, Dugan accepted that offer and entered into that agreement with BBP (the "BBP Agreement"). (Exhibit A)

20. Pursuant to their agreement, Dugan created and delivered original works of fine art to be exhibited and sold by BBP.

21. As consignee, and as Dugan's fiduciary, BBP had a contractual obligation under the BBP Agreement: (a) to exhibit and sell artworks on a consignment basis; (b) to pay Dugan all proceeds due to her less a 50% commission within thirty days of sale; and that (c) Dugan would retain title to any artworks consigned until sold.

22. The initial term of the consignment agreement was one year from signing, continuing until a party requests that the artworks be returned.

23. Pursuant to sections 5 and 6 of the BBP Agreement, "[s]hould the works remain unsold at the end of the consignment, the Gallery will bear costs of shipping the works back to the Artist," and "[t]he Gallery shall be responsible for the safekeeping of all consigned Artworks while they are in its custody," and liable for the risk of loss or damage.

24. The BBP Agreement was terminated in or around May 2024 – the Gallery had 36 unique artworks in their care, custody and control at this point that they had to return to Dugan.

25. BBP handled the deinstallation, handling, packing and shipping the artworks back to Dugan. This included removing multiple, but not all the backing boards off of the Artworks, as confirmed in writing (Exhibit B).

26. The removal of the backing board prior to shipment back to Dugan was the first indication that the Artworks had been irreparably damaged by BBP.

27. BBP did not note the damage they discovered in removing the backing boards prior to shipping the Artworks.

28. On December 11, 2024, Dugan opened the crates upon receipt to find that 23 of the Artworks had evidence of poor handling and packing procedures, large gouges, craters,

losses (missing material) that permanently altered and damaged them, rendering them either constructive total losses or total losses.

29. Dugan notified BBP of the loss later that day noting:

*Kathlene, I received the crate a few hours ago and have opened and inspected it. I am shocked to find that the works that were framed were not prepared following normal industry archival standards. The back mounting boards of most of the pieces are still permanently affixed to the original works, completely altering the visual integrity of the original pieces and permanently damaging them.*

*Also, it appears that you removed the backing boards from several pieces, and have permanently damaged the backs of all of those as well with large visible gouges from the glue used.*

30. It was only after Dugan confronted BBP about the damage to her Artworks that BBP admitted that they had noticed that upon removing the backing boards that the works were being damaged when the backing boards were removed.

31. Because Dugan is an artist and BBP is an art merchant, and because the artworks were entrusted by Dugan to BBP while she operated out of New York State, the status of the entrusted works, the proceeds of any sale of the entrusted works, and the relationship between Dugan and BBP are all governed by and determined under the NYACAL.

32. Pursuant to NYACAL § 12.01(1)(a)(ii), all of the artworks entrusted by Dugan to BBP became trust property in the hands of BBP for the benefit of Dugan.

33. As trust property and trust funds in the hands of BBP, Dugan had an absolute ownership right to the artworks entrusted to BBP (up to and until any authorized sale) and in the event of any authorized sale an absolute ownership right to the proceeds of the sale.

34. As Dugan's agent for the conservation and sale of such artwork, and for the remittance of any trust funds from any sale of an artwork consigned by Dugan, BBP was a fiduciary on behalf of Dugan, and subject to all requirements that such a relationship entails.

35. Implicit in the agreement between the parties, and as an obligation imposed upon a bailee as a matter of law, BBP was responsible for the care and conservation of consigned works and other entrusted property while in BBP's custody or control. Because BBP was obligated to return any works that were not sold upon demand, this obligation existed up to and until the works were delivered back into Dugan's possession.

36. Dugan performed her obligations under the BBP Agreement.

37. This action also arises out of the BBP's wrongful display of 39 unique works of art created by Dugan and Dugan's name, image, portrait and likeness.

38. As the Agreement was terminated no later than January 2025, any use of images of Dugan's artworks, her name, image, portrait or likeness by BBP on its website or social media platforms (or that they caused to be otherwise publicly displayed, published, distributed, copied or disseminated constitute) following that date was, is, and will continue to be an infringement of Dugan's individual rights.

39. BBP has continued to use Dugan's name, image, portrait, likeness and images of her artworks for purposes of advertising and trade after the termination of the agreement, in violation of Dugan's intellectual property and personal rights.

40. By its misconduct, the gallery has brazenly violated its legal and equitable obligations to Dugan, inter alia, through its misuse of Dugan's name, image, portrait, likeness and images of her artworks for purposes of advertising and trade without her post-termination consent.

41. Any use of Dugan's name, image, portrait and likeness without her signed, written consent is violative of the New York Civil Rights Law Sections 50, 51 except as may be specifically excluded therein.

42. The full nature and extent of the use of images of Dugan's artworks, as well as her name, image, portrait and likeness by the gallery is unknown by plaintiffs at this time, such information being in full custody, possession and control of the gallery.

43. All specific dates on which images of Dugan's artworks, as well as her name, image, portrait and likeness, were used, entered the marketplace, and became visible online are unknown by plaintiffs at this time, such information being in full custody, possession and control of BBP

44. The gallery has no defense to the infringing actions.

**As and for a First Cause of Action**
**<u>Breach of Contract</u>**

45. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

46. Dugan and BBP had a contractual relationship under which Dugan consigned and/or transferred possession of Artworks of art at issue in this action, to BBP.

47. Dugan performed all of her obligations under the contract.

48. BBP was contractually obligated to take good care of the Artworks and keep them safe from damage. BBP had an additional obligation to return unsold works to Dugan in the same condition they were in at the time they were consigned to BBP.

49. BBP breached its contractual obligations by causing damage to Artworks, failing to keep them free from damage, and/or failing to supervise others who caused or allowed the damage to occur, by failing to prevent the damage from worsening, and by returning the unsold artworks to Dugan in severely damaged condition.

50. As a direct and proximate result of BBP's breach of its contractual obligations under the BBP Agreement, Dugan has been damaged in an amount to be determined by a jury,

but not less than her share of $144,300.00 the value of the artwork lost, plus prejudgment interest.

## As and for a Second Cause of Action
## Breach of Fiduciary Duty

51. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

52. BBP, as a consignee of the work owned by Dugan, the artist consignor, owed fiduciary duties to Dugan, including but not limited to the duties of care and the duty to keep the Artworks safe and free from damage. BBP also had an obligation to return unsold works to Dugan in the same condition they were in at the time they were consigned.

53. Pursuant to NYACAL § 12.01, BBP is deemed to be an agent acting as fiduciary to Dugan with respect to all the Unsold Artworks and with respect to any proceeds received by BBP in respect of the disposition of such artworks.

54. At all relevant times, BBP owed Dugan a duty to act in accordance with the express and implied terms of the parties' agreements and have breached same, as alleged in the breach of contract cause of action.

55. BBP breached its fiduciary duties to Dugan by causing damage to the Artworks, failing to keep those Artworks free from damage, failing to supervise others who caused or allowed the damage to occur, and/or failing to prevent the damage from worsening, and by returning the unsold works of art to Dugan in severely damaged condition.

56. Dugan has been injured and incurred damage in the amount of at least $144,300.00 as a direct result of BBP's breach of its fiduciary obligations. BBP's misconduct has additionally caused damage to Dugan's reputation and legacy as an important American artist.

57. As a direct, proximate, and foreseeable result of BBP's breach of its fiduciary duties, Dugan has been injured and has suffered damages.

58. Dugan respectfully request that the Court award damages to Dugan in the amount of at least $144,300.00, with the precise amount to be determined at trial.

59. As a direct, proximate, and foreseeable result of BBP's breach of its fiduciary duties, Dugan is entitled to recover all commissions by BBP in connection with the consignment pursuant to the faithless servant doctrine.

60. BBP is liable for losses incurred and for gains foregone by Dugan because of BBP's breach of fiduciary duty.

61. By reason of the foregoing, Dugan is entitled to: (i) compensatory damages in an amount to be proven at trial but not less than her share of value of the artwork lost ($144,300.00), plus prejudgment interest; and (ii) attorney's fees, costs, and expenses to enforce Dugan's rights under NYACAL § 12.01 as provided for pursuant to NYACAL § 12.01(3), plus prejudgment interest, pursuant to C.P.L.R. § 5001.

**As and for a Third Cause of Action**
**Violation of NYACAL § 12.01**

62. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

63. Dugan was the sole creator of all artworks that she consigned to BBP and is a was an artist as described in NYACAL Article 12.01.

64. BBP is an "art merchant" within the meaning of NYACAL § 12.01(2).

   a. BBP is a company that is in the business of dealing in works of fine art.

   b. BBP is a company that by its occupation holds itself out as having knowledge or skill peculiar to dealing in such works.

      c.      BBP is a company to which such knowledge or skill may be attributed by its employment of an agent or other intermediary who by its occupation holds itself out as having such knowledge or skill.

      d.      Each of the Consigned Artworks is a work of "fine art" within the meaning of NYACAL § 11.01(9).

65. The delivery of the Artworks at issue in this action to BBP established a consignor/consignee relationship as set forth in NYACAL Article 12.01.

66. BBP accordingly was the agent of Dugan and owed to Dugan all duties set forth in NYACAL Article 12.01. Likewise, all art at issue in this action was trust property in the hands of BBP for the benefit of Dugan, as set forth in NYACAL Article 12.01. BBP also had an obligation to return unsold Artworks to Dugan in the same condition they were in at the time they were consigned.

67. By causing, enabling and failing to remedy damage to the trust property at issue, and by failing to keep those Artworks free from damage and/or failing to supervise others who caused or allowed the damage to occur, and by returning the unsold Artworks to Dugan in severely damaged condition, BBP breached its NYACAL Article 12.01 fiduciary obligations to Dugan.

68. Dugan has been injured and damaged as a result of BBP's breaches, as is set forth in all preceding paragraphs.

69. Dugan respectfully request that the Court award damages to Dugan in the amount of at least $144,300.00, together with recovery of their reasonable attorneys' fees, costs and expenses, as expressly permitted by NYACAL Article 12.01, with the precise amount to be determined at trial. a. failed to safeguard consigned works from loss or damage; and may have

committed other acts of misconduct which are not currently known to Dugan but will be learned upon further discovery.

70.     BBP is liable for any and all losses incurred and for any and all gains foregone by Dugan as a result of BBP's breach of trust.

71.     By reason of the foregoing, Dugan is entitled to: (i) compensatory damages in an amount to be proven at trial plus prejudgment interest; (ii) attorney's fees, costs and expenses to enforce Dugan's rights under NYACAL § 12.01 as provided for pursuant to NYACAL § 12.01(3).

**As and for a Fourth Cause of Action**
**BBP's Breach of Bailee's Duties**

72.     Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

73.     As the bailee and consignee of Dugan's artworks, and as art dealer/agent of Dugan, BBP owed fiduciary duties to Dugan, including but not limited to the duty of care and the duty to keep the Artworks safe and free from damage. BBP also had an obligation to return the unsold works to Dugan in the same condition they were in at the time they were consigned.

74.     BBP breached its bailee's duties to Dugan by causing damage to the Artworks, failing to keep those works of art free from damage, failing to supervise others who caused or allowed the damage to occur, and/or failing to prevent the damage from worsening, and by returning the unsold works of art to Dugan in severely damaged condition.

75.     As set forth in all preceding paragraphs, Dugan has been injured and incurred damage in the amount of at least $144,300.00 as a direct result of BBP's breach of its bailee's obligations.

76. Dugan respectfully request that the Court award damages to Dugan in the amount of at least $144,300.00, with the precise amount to be determined at trial.

**As and for a Fifth Cause of Action**
**New York Civil Rights Law §§ 50 and 51**

77. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

78. Since the January 2025 termination of the Agreement BBP has continued to use Dugan's name, image, portrait and likeness including, but not limited to, on the website https://blackboxprojects.art/artists/34-joanne-dugan/exhibitions/ and on BBP's social media platforms, without Dugan's written consent, within the State of New York, for purposes of advertising or trade.

79. The New York Civil Rights Law Sections 50 and 51 specifically proscribe the use of an individual's name, portrait or picture for trade, commercial or advertising use without the written consent of said individual. Said statutes provide *inter alia*, that compensatory and punitive damages are recoverable thereunder (Sec. 51). Section 50 evidences a strong public policy against such unauthorized use. Section 51 enumerates civil remedies available thereunder including but not limited to money damages in the form of compensatory and/or exemplary damages and injunctive relief.

80. BBP's proscribed uses of Dugan's name, image, portrait and likeness are in direct violation of the statutes as there existed/exists no executed written consent since termination of the BBP Agreement and notice to the specific uses complained of herein from the point of termination and notice.

81. BBP employed and continues to employ Dugan's name, image, portrait and likeness with knowledge that it had and has no authority to do so. Such usage is "willful" as

defined by the language of New York Civil Rights Law Section 51 and as interpreted by applicable case law in this State.

82. Dugan has and will continue to suffer reputational harm, confusion of sponsorship and affiliation, and damages thereby.

83. As a result of the foregoing and pursuant to said statutes, but not to the exclusion of any other remedies under common law or statute, Dugan has been damaged and is entitled to relief as per statute in the forms of compensatory damages, in a sum to be determined by this Court, punitive or exemplary damages in a sum ultimately to be determined by this Court, and costs and expenses incurred by Dugan in the prosecution of this action together with an Order from this Court permanently restraining BBP from utilizing Dugan's name, image, portrait and likeness in any manner or for any purpose whatsoever.

**As and for a Sixth Cause of Action**
**Article 5 of New York Civil Rights Law**

84. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

85. In November 2024, BBP's authority to act on Dugan's behalf was terminated and therefore BBP was under a duty to cease use of, and remove all references to, Dugan and images of her artworks, including but not limited to on BBP's website and social media platforms.

86. Dugan's termination gave BBP actual and constructive notice of her intent that BBP cease, desist and refrain from further use of Dugan's name, image, portrait and likeness, and images of her artworks.

87. Notwithstanding Dugan's explicit and implicit instruction, BBP has continued without Dugan's consent to use Dugan's name, image, portrait and likeness, her artworks, and

images of her artworks, including, but limited to, on BBP's website and social media platforms for the purposes of advertising or trade within the State of New York.

88. As a result, Dugan has suffered reputational harm and damages arising from the diminution of the market value of her artworks and confusion regarding her representation among art collectors, galleries, art dealers, potential clients, potential agents, and other persons.

89. As a result, Dugan is entitled to damages, exemplary damages, and an order restraining BBP from using her name, image, portrait, likeness, artworks and images of her artworks.

### As and for a Seventh Cause of Action
### Injunctive Relief

90. Dugan repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

91. Due to the wrongful acts alleged herein, Dugan is entitled to an order against BBP, inter alia, permanently and preliminarily enjoining and restraining BBP, its agents, servants, employees, attorneys, and all those in active concert or participation with it from:

   a. further use of Dugan's name, image, and artworks for any purpose, including but not limited to descriptions, images, copies, and listings of Dugan's artworks.

   b. directly or indirectly infringing any of Dugan's exclusive rights in the artworks and other copyrights, whether now in existence or later created, including without limitation by reproducing or publicly displaying these works or selling any products bearing or consisting of copies of these works, except pursuant to a lawful license or with the express authority of Dugan;

  c. making any false statements or representations or engaging in any other activity that suggests that BBP or its business is in any way affiliated with, approved, licensed or endorsed by Dugan;

  d. effecting assignments or transfers, forming new entities or associations, or using any other entities or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in the subparagraphs above.

## Demand for Jury Trial

92. Dugan hereby demands a trial by jury of all issues so triable.

* * *

**WHEREFORE**, by reason of the foregoing, plaintiff Joanne Dugan and Joanne Dugan Studio, LLC hereby pray for the following relief:

1. Permanently and preliminarily enjoining and restraining defendant BBP, its agents, servants, employees, attorneys, and all those in active concert or participation with it from further use of Dugan's name, image, and artworks for any purpose, including but not limited to descriptions, images, copies, and listings of Dugan's artworks.

2. Directing that BBP report to this Court within thirty days after a permanent injunction is entered to show compliance with the foregoing requirements.

3. For an award of actual, punitive, compensatory, consequential, exemplary and/or special damages in an amount to be determined at trial.

4. For an order awarding the costs of this action, including reasonable attorneys' fees; and for an order awarding such other and further relief as this Court may deem just and proper.

5. Such further monetary damages as may be proved at trial, but no less than $144,300.00 plus costs, fees, and reasonable attorneys' fees, to the extent permissible by applicable law.

Dated: October 24, 2025

          Respectfully submitted,

          MAZZOLA LINDSTROM LLP

By: *Wendy J. Lindstrom*

Wendy Lindstrom
Hanoch Sheps
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
M: 516.680.2889
wendy@mazzolalindstrom.com
hanoch@mazzolalindstrom.com
Attorneys for plaintiffs

16